**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MARYLAND ELECTION INTEGRITY, LLC, *et al.*, | * |
| *Plaintiffs*, | * |
| v. | * |
| | No. 1:24-cv-00672-SAG |
| | * |
| MARYLAND STATE BOARD OF ELECTIONS, | * |
| *Defendant*. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant Maryland State Board of Elections (the "State Board") by undersigned counsel submits this memorandum in support of its motion to dismiss plaintiffs' operative complaint (ECF 16) for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

## TABLE OF CONTENTS

Page

STATEMENT OF FACTS .................................................................................................. 2

    Pertinent Federal Election Laws .................................................................................. 2

    Allegations in the Complaint ........................................................................................ 4

ARGUMENT ..................................................................................................................... 7

I.    A FAILURE TO ESTABLISH SUBJECT MATTER JURISDICTION WARRANTS
    DISMISSAL;  LIKEWISE,  RELIANCE  ON  CONCLUSORY  FACTUAL
    ALLEGATIONS WARRANTS DISMISSAL FOR FAILURE TO STATE A CLAIM. ........... 7

II.    THE COMPLAINT FAILS TO ESTABLISH SUBJECT MATTER JURISDICTION BY
    FAILING TO ESTABLISH STANDING FOR EITHER PLAINTIFF AND BY FAILING
    TO PLEAD A COGNIZABLE FEDERAL QUESTION ......................................................... 8

    A.    Both Organizational Plaintiffs Fail to Establish Standing by
        Neglecting to Plead Injury-in-Fact to Their Members. ................................. 8

    B.    The Complaint Presents No Federal Question Because It Lacks a
        Cognizable Federal Claim. ......................................................................... 12

III.    THE FACTUAL ASSERTIONS IN THE COMPLAINT LACK SUPPORT IN REALITY ........ 17

CONCLUSION .............................................................................................................. 20

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND ELECTION INTEGRITY, LLC, *et al.*, | * |
| *Plaintiffs*, | * |
| | * |
| v. | * |
| | No. 1:24-cv-00672-SAG |
| | * |
| MARYLAND STATE BOARD OF ELECTIONS, | * |
| *Defendant*. | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Plaintiffs are a Maryland limited liability company and Missouri nonprofit corporation (ECF 16 ¶¶ 1-2) (the "companies") who seek, among other things, to prevent Maryland from holding any local, state, or federal elections during the 2024 presidential election cycle (ECF 16 at 35-36 ¶¶ B-M).  The companies accuse the Maryland State Board of Elections (the "State Board") of "flaunt[ing] the Constititonal requirement to only allow known citizens eligible to vote, to vote" and "los[ing] control of [Maryland's] voting system."  (ECF 16 ¶¶ 208, 211.)  They therefore request this Court grant declaratory and injunctive relief for perceived violations of the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901–21145; the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501–20511; provisions of state election law, Md. Code. Ann. (LexisNexis 2023), Elec. Law Art., §§ 1-101–16-1004; *and* COMAR 33.01.01.01– 33.22.03.02; and, provisions of state public information access law, Md. Code Ann.

(LexisNexis 2019), Gen. Prov. Art., §§ 4-101–4-601.  They also request this Court issue a writ of mandamus ordering the State Board into compliance with these laws.

The companies' complaint, however, fails to vest this Court with jurisdiction to entertain their accusations; and, fails to factually allege a claim upon which relief could be granted.  The companies allege no "injury in fact" explaining how their allegations of election maladministration injured any individual member "in a personal and individual way." *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n. 1 (1992)).  The federal statutes cited in the complaint do not provide the companies with causes of action, leaving only state law claims before the Court.  *See Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) ("The mere assertion of a federal claim is not sufficient to obtain jurisdiction.")  And the companies plead "conclusory factual allegations devoid of any reference to actual events."  *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 586 (D. Md 2014).

The operative complaint (ECF 16) should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted.

## STATEMENT OF FACTS

### Pertinent Federal Election Laws

The Help America Vote Act "was enacted in 2002 to help improve the equipment to cast votes, the way registration lists are maintained, and how polling operations are conducted."  *American Civil Rights Union v. Philadelphia City Commissioners*, 872 F.3d 175, 180 (3d Cir. 2017).  Pertinent to this suit, HAVA imposes requirements on "voting

systems used in an election for Federal office" including standards for audit capability, accessibility, and error rates.   52. U.S.C. § 21081(a).   HAVA also establishes the Election Assistance Commission, *id* at § 20921, which, among other duties, provides for the "testing, certification, decertification, and recertification of voting system hardware and software," *id* at § 20971(a)(1).   States are not required by the federal law to have their voting systems tested or certified by the Commission.  *Id.* at § 20971(a)(2).

HAVA accomplishes enforcement of its requirements by two methods.  First, the law authorizes the United States' Attorney General to seek declaratory and injunctive relief "as may be necessary to carry out" the voting system requirements codified at 52 U.S.C. § 21081.   And second, the law requires states who receive HAVA funding to "establish and maintain State-based administrative complaint procedures," for the adjudication and disposition of complaints relating to HAVA's requirements.  52 U.S.C. § 21112(a)(1)&(2)(B).   HAVA does not provide a private cause of action against election officials who administer voting systems pursuant to HAVA's requirements.

The National Voter Registration Act standardizes the means by which each state administers its rolls of registered voters.   It requires all states to provided minimal methods by which a person may apply to register to vote.  52 U.S.C. § 20503(a).  The law also bars a state from purging eligible voters from its voter rolls, permitting the removal of an individual from a voter registration list only by way of that person's request, death, disability due to conviction or incapacity, or change in residence.  *Id.* at § 20507(a)(4). Finally, the NVRA requires states to maintain publicly-accessible records on their

"programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id.* at § 20507(i)(1).

Congress entrusted enforcement of the NVRA's requirements to both the Attorney General and private individuals. The law grants the Attorney General power to institute a civil action for declaratory and injunctive relief "as is necessary to carry out [the NVRA]." *Id.* at § 20510(a). Additionally, the NVRA grants a private cause of action to "a person who is aggrieved" by an NVRA violation. *Id.* at § 20510(b)(1). The private cause of action, though, is predicated on a plaintiff transmitting timely notice of a claim prior to filing suit. *Id.* at § 20510(b)(2)&(3). Failure to provide the required notice is grounds for dismissing a private plaintiff's suit. *Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir. 2014).

**Allegations in the Complaint**

Maryland Election Integrity, LLC, pleads that it is a company "containing members who are registered voters in the state of Maryland." (ECF 16 ¶ 9.) The operative complaint identifies only Kate Sullivan, a Baltimore County resident, as one such member. (ECF 16 ¶ 10.) Maryland Election Integrity does not plead whether Ms. Sullivan voted in the 2020 or 2022 elections, the candidates or causes she supported, how those candidates or causes were defeated because of the State Board's alleged actions, or whether Ms. Sullivan plans on voting in the 2024 primary or general elections. It alleges only that Ms. Sullivan observed voter registration discrepancies (ECF 16 ¶¶ 10, 43) and that she was "personally injured by the inaccurate voter registration records of Baltimore

County, and the state, which has allowed otherwise ineligible voters to vote, thus diluting her vote" (ECF 16 ¶ 46).

Maryland Election Integrity does not plead any direct injury to itself.  The operative complaint states that the company was created "for the purpose of resolving violations of Maryland law and restoring trust in Maryland Elections."  (ECF 16 ¶ 49.) Nothing the State Board is alleged to have done interfered with that purpose; rather, the "interests at stake in this complaint are germane to Maryland Election Integrity's purpose."  (ECF 16 ¶ 50.)

United Sovereign Americans, Inc., pleads that it is a "nonprofit corporation incorporated in the state of Missouri."  (ECF 16 ¶ 2.)  The operative complaint provides no other information on the Missouri corporation.

Together, the companies accuse the State Board of mismanaging State electoral operations in six ways.  First, the companies allege that the State's voter registration list contained 79,392 "apparent registration violations" between August 2021 and July 2023. (ECF 16 ¶ 30.)  According to the companies, the "apparent registration violations" breach provisions of the NVRA and "specific Maryland laws pertaining to voter registration." (ECF 16 ¶¶ 33-40) (citing 52 U.S.C. § 20507(a)(4)&(d); *and* Elec. Law §§ 3-101, 3-102, 3-502, 3-503 & 3-504.))  The "violations" also allegedly contravene HAVA's voting system requirements related to error rates.  (ECF 16 ¶ 62.)  The companies seek a judgment declaring the State Board in violation of these laws.  (ECF 16 at 30 ¶ B.)

Second, the companies claim that 62,075 "apparent voting system errors in counting votes" affected the conduct of the 2020 general election in Maryland; and

27,623 of the same affected the conduct of the 2022 general election.  (ECF 16 ¶¶ 68-69.)  According to the complaint, these "apparent" errors exceed the "maximum allowable error rate" imposed on voting systems by HAVA.  (ECF 16 ¶¶ 72-73 (referring to 52 U.S.C. § 21081(a)(5).)  The companies seek judgment declaring as much.  (ECF 16 at 30 ¶ C.)

Third, the companies allege that the State Board "did not review the source code for ES&S EVS 5.2.0.0."  (ECF 16 ¶ 99.)  Fourth, the State Board allegedly used voting systems with "void" EAC certifications during "elections" prior to 2017.  (ECF 16 ¶¶ 120-121, 125, 128.)  Fifth, the State Board allegedly responded inadequately to requests made under the Maryland Public Information Act for voting system audit logs. (ECF 16 ¶¶ 131-132, 155.)  And sixth, the companies accuse the State Board of inadequately responding to Public Information Act requests investigating a theory of Maryland's voting systems improperly counting "blank ballots."  (ECF 16 ¶¶ 159-161, 183-184.)  The companies plead these third, fourth, fifth, and sixth allegations as violations of state law (ECF 16 ¶¶ 99, 124, 155, 181-84), requesting declaratory judgment on each, (ECF 16 at 30 ¶¶ D, E, F, G).

In addition to declaratory judgment, the companies request injunctive relief.  The injunctive relief, however, does not seek to have the State Board comply with the applicable federal and State laws.  Instead, the companies ask this Court to impose a voter registration system and voting system on the State that comply with the companies' personal preferences.  (ECF 16 at 35-37.)  And until that time, the companies ask this Court to enjoin the administration or certification of any election in the State; and ask for

the appointment of a "Special Master" to "guide" the State Board in adopting an acceptable voting system (ECF 16 at 36 ¶ M.)

## ARGUMENT

### I.    A FAILURE TO ESTABLISH SUBJECT MATTER JURISDICTION WARRANTS DISMISSAL; LIKEWISE, RELIANCE ON CONCLUSORY FACTUAL ALLEGATIONS WARRANTS DISMISSAL FOR FAILURE TO STATE A CLAIM.

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is properly granted "where a claim fails to allege facts upon which the court may base jurisdiction." *Pruitt v. Resurgent Capital Serv.*, 610 F. Supp. 3d 775, 779 (D. Md. 2022).   The plaintiff bears the burden of establishing subject matter jurisdiction.  *People for the Ethical Treatment of Animals, Inc. v. Tabak*, 662 F. Supp. 3d 581, 588 (D. Md. 2023).  This Court looks to the complaint as "mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  If the complaint "fails to allege facts upon which the court may base jurisdiction," the complaint must be dismissed.  *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).

Under Rule 12(b)(6), a motion to dismiss tests the sufficiency of the complaint placed before the court.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The complaint must contain "sufficient factual matter" to present a "plausible" claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  Judging the plausibility of a claim requires a court to draw on "its judicial experience and common

sense." *Id*. at 679.   And only "well-pleaded" allegations must be considered true.

*Chambers v. King Buick GMC, LLC*, 43 F.Supp.3d 575, 586 (D. Md. 2014).   Legal

conclusions disguised as factual allegations may be rejected.   *Iqbal*, 556 U.S. at 678.

And conclusory factual allegations "devoid of any reference to actual events" may also

be discounted.   *Chambers,* 43 F.Supp.3d at 586 (citing *United Black Firefighters v. Hirst*,

604 F.2d 844 (4th Cir. 1979)).

## II.   THE COMPLAINT FAILS TO ESTABLISH SUBJECT MATTER JURISDICTION BY FAILING TO ESTABLISH STANDING FOR EITHER PLAINTIFF AND BY FAILING TO PLEAD A COGNIZABLE FEDERAL QUESTION.

### A.   Both Organizational Plaintiffs Fail to Establish Standing by Neglecting to Plead Injury-in-Fact to Their Members.

Article III of the United States Constitution limits the jurisdiction of federal courts

to "cases" and "controversies."   U.S. Const. Art. III, § 2.   The maintenance of a case or

controversy relies, among other things, on standing—a plaintiff's ability to plead a

"personal stake in the outcome of the controversy."   *Buscemi v. Bell*, 964 F.3d 252, 258

(4th Cir. 2020) (quotation omitted).   To establish standing, it is the plaintiff's burden to

sufficiently plead "injury in fact, causation, and redressability."   *Lance v. Coffman*, 549

U.S. 437, 439 (2007).   The failure to establish standing is a failure to establish subject

matter jurisdiction.   *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019).

An "injury in fact" is an injury that is "concrete," "particularized," and "actual or

imminent, not conjectural or hypothetical."    *Bell*, 964 F.3d at 258-59 (quoting *Lujan*, 504

U.S. at 560)).   Plaintiffs must identify a harm, an "invasion of a legally protected

interest," and adequately identify how that harm affects them "in a personal and

8

individual way." *Gill*, 138 S. Ct. at 1929 (quoting *Lujan*, 504 U.S. at 560 n. 1)). Asserting the violation of an interest "which is held in common by all members of the public" fails as a matter of law to establish Article III standing. *Schlesinger v. Reservist Comm. to Stop the War*, 418 U.S. 208, 220 (1974).

In election and voting rights challenges, a plaintiff's standing is naturally entwined with their "individual and personal" right to vote. *Gill*, 138 S. Ct. at 1929 (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). "'[V]oters who allege facts showing disadvantage to themselves as individuals have standing to sue to remedy that disadvantage." *Id.* (quoting *Baker*, 369 U.S. at 206)). In contrast, voters who fail to plead any personal disadvantage or impairment of the ability to vote cannot maintain Article III standing. *See, e.g.*, *Bell*, 964 F.3d at 260 (holding that North Carolina voter challenging state write-in vote restrictions failed to establish standing by failing to allege how restrictions impaired his personal ability to cast a write-in vote).

The operative complaint names two companies as plaintiffs but fails to establish standing for either one. In relation to United Sovereign Americans, Inc., the complaint acknowledges that United Sovereign Americans could not "satisfy independently the demands of Article III." (ECF 16 ¶ 13.) And it concedes that any alleged controversy only exists between the State Board and Maryland Election Integrity, LLC. (ECF 16 ¶ 187.)

In relation to Maryland Election Integrity, LLC, "[a]n organizational plaintiff can satisfy the standing requirements in two ways: either injury in its own right, or injury as a representative of its members." *Voto Latino v. Hirsch*, ___ F. Supp. 3d. ___, ___, 2024

WL 230931, *9 (M.D.N.C. 2024).  An organization pleads injury in its own right when it sufficiently alleges that the defendant's actions "impeded its efforts to carry out its mission."  *Lane v. Holder*, 703 F.3d 668, 674-75 (4th Cir. 2012).  Maryland Election Integrity does not plead injury in its own right, conceding that the "interests" in its suit are "germane" to its purpose.  (ECF 16 ¶ 50.)

As a representative of its members, Member Election Integrity can only maintain standing by demonstrating: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Students for Fair Admissions, Inc. v. Pres. & Fellows of Harvard*, 600 U.S. 181, 199 (2023).  But Maryland Election Integrity fails to demonstrate that any of its members would otherwise have standing to sue in their own right.

As to its members at large, the operative complaint provides only conclusory assertions that the members "have been and are currently harmed" (ECF 16 ¶ 11) and that the voter registration and voting system errors diluted "Plaintiff's votes" (ECF 16 ¶ 1197).  But it provides no factual allegations about the company's members or the harm they've suffered that differs from the harm any eligible voter would suffer from the alleged systematic violation of election laws.  *See United States v. Hayes*, 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power"); *see also Gibson v. Frederick County*, 2022 WL 17740406, slip op. at *5

(filed Dec. 16, 2022) (collecting cases in which recent suits alleging widespread electoral violations were dismissed to due to lack of standing).  Maryland Election Integrity was obliged to plead "facts showing disadvantage to [the members of Maryland Election Integrity] as individuals." *Gill*, 138 S. Ct. at 1929.  But the complaint does not even allege whether the members of the company voted in any Maryland election, much less how the State Board defeated its members' supported candidates or causes.

The operative complaint specifies injury to one member, Kate Sullivan, in an attempt to demonstrate standing.  (ECF 16 ¶ 10.)  But Maryland Election Integrity alleges that Ms. Sullivan's only injury was vote dilution, stemming from "inaccurate voter registration records." [1]  (ECF 16 ¶ 46.)  It is not clear what vote was diluted, as the complaint does not allege whether and how Ms. Sullivan voted in any Maryland election. It is not clear how allegedly inaccurate records in Baltimore County diluted Ms. Sullivan's vote in races for statewide office or on statewide ballot questions.  And vote dilution "refers specifically to 'invidiously minimizing or canceling out the voting

---

[1] The operative complaint also claims that Ms. Sullivan has standing to raise the issue of blank ballots being cast in violation of HAVA.  (ECF 16 ¶ 168.)  It alleges that the "high number of blank ballots . .  cast in Baltimore County, creat[ed] the fear and threatened injury that [Ms. Sullivan's] ballot was cast blank without notice to her."  (*Id.*) But "threatened injury" does not seem to mean what the companies want it to mean.

"Threatened injury," as that term is used for purposes of standing, refers to a future, "impending" injury.  *Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017).  It is not a speculative, past injury caught, in the plaintiff's view, between fiction and possibility.  As the companies plead it, the hypothetical possibility that Ms. Sullivan unknowingly cast a blank ballot is not an injury in fact.  That hypothetical possibility fails all three prongs of the injury-in-fact analysis, in that it is not "concrete and particularized," it is not "fairly traceable" to the State Board's alleged conduct, and there is no way this court could confidently redress it.  *Id.* (quotation omitted).

potential <u>of racial or ethnic minorities</u>.'" *Moore v. Circosta*, 494 F. Supp. 3d 289, 312 (M.D.N.C. 2020) (quoting *Abbott v. Perez*, 585 U.S. 579, 586 (2018)) (underline in original). Vote dilution is insufficient as a theory of standing when based entirely "on the possibility of unlawful or invalid ballots being counted." *Id.* (collecting cases in support).

Maryland Election Integrity therefore does maintain standing to assert its own injury and cannot maintain standing to assert the injury of its members in a representative capacity.[2] The companies failed to establish standing for this suit, depriving this Court of subject matter jurisdiction.

**B.    The Complaint Presents No Federal Question Because It Lacks a Cognizable Federal Claim.**

By congressional grant, this Court possesses subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the Unites States." 28 U.S.C. § 1331. The companies invoke this federal question jurisdiction as one of the jurisdictional bases for their complaint. (ECF 16 ¶¶ 5-6.) But "[t]he mere assertion of a federal claim is not sufficient to obtain jurisdiction under 28 U.S.C. § 1331." *PEM Entities*, *LLC v. County of Franklin*, 57 F.4th 178, 183 (4th Cir. 2023). The asserted

---

[2] This is also true for the allegations Maryland Election Integrity makes about the State Board's responses to Maryland Public Information Act requests. Even after amendment, the operative complaint still only specifies how requests under the state information access law "were made" (ECF 16 ¶ 126) or "were requested" (ECF 16 ¶¶ 147, 178, 183), but never provides any further information. It is not clear whether Kate Sullivan, or any members of Maryland Election Integrity, made the requests, when they did so, and what responses they received. Such information is integral to the question of subject matter jurisdiction, as State law only provides a cause of action to a person who is "denied inspection of a public record or is not provided with a copy, printout, or photograph of a public record as requested," Gen. Prov. § 4-62(a)(1); and imposes a two-year statute of limitations to bring the action, Cts. & Jud. Proc. § 5-110.

claim must be one "for which federal law creates a cause of action." *Krist v. Erck*, 616 F. Supp. 3d 471, 474 (D. Md. 2022).  And the wholesale absence of a cognizable federal cause of action leaves a district court without jurisdiction to entertain a suit under § 1331. *Lovern v. Edwards*, 190 F.3d 648, 654-55 (4th Cir. 1999); *see also Dinkins v. Region Ten CSB*, 289 F. Supp. 3d 756, 758-59 (W.D. Va. 2018) (finding federal question jurisdiction lacking where plaintiff alleged violations of the Federal Rules of Civil Procedure and the Rules of Decision Act in addition to state law claims).

In this suit, the companies primarily claim that the State Board violated state laws governing election operations and public information access. (*See* ECF 16 ¶¶ 41, 99, 124, 130, 155, 184, 187.)  The only federal statutes mentioned in the complaint are HAVA, the NVRA, 42 U.S.C. § 1983, and 28 U.S.C. § 2201 (providing a declaratory judgment remedy).  None of those federal statutes, though, provide the companies with a private cause of action in this suit.

In the jurisdictional section of the complaint, the companies plead that this Court "has authority to issue a declaratory judgment and to order injunctive and other relief" under 28 U.S.C. § 2201.  (ECF 1 ¶ 5.)  But "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201, alone does not provide a court with jurisdiction." *California v. Texas*, 593 U.S. 659, 672 (2021).  The Declaratory Judgment Act provides a potential remedy for other causes of action, "it does not create an independent cause of action." *Profiles, Inc. v. Bank of America*, 453 F. Supp. 3d 742, 752 n. 6 (D. Md. 2020).  The companies therefore cannot rely on a claim for federal declaratory judgment as a basis for federal question jurisdiction.

Elsewhere in the complaint, the companies plead that the State Board allegedly violated various provisions of HAVA.  (ECF ¶¶ 40, 54, 126, 156).  The Help America Vote Act, however, contains no private cause of action.  *See e.g. Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008); *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019); *American Civil Rights Union*, 872 F.3d 175, 181 (3d Cir. 2017); *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004); *Georgia Voter Alliance v. Fulton County*, 499 F. Supp. 3d 1250, 1256 (N.D. Ga. 2020); *Texas Voters Alliance v. Dallas County*, 495 F. Supp. 3d 441, 458-59 (E.D. Tex. 2020).  HAVA provides only two methods of enforcement: (1) civil suit for declaratory and/or injunctive relief brought by the Attorney General, 52 U.S.C. § 21111; and (2) "State-based administrative complaint procedures,"[3] 52 U.S.C. § 21112(a)(1).  Pleading a violation of HAVA, then, does not present this Court with federal question jurisdiction.

The companies attempt to address this shortcoming by asserting that "any violation of HAVA by Defendant is a violation of a fundamental right" redressable under 42 U.S.C. § 1983.  (ECF 16 ¶ 79.)  They thus claim that the alleged violation of 52 U.S.C. § 21081(a)(1)(A)(ii) "creates a cause of action under 42 U.S.C. § 1983."  (ECF 16

---

[3] Pursuant to HAVA's requirements, Maryland provides an administrative complaint procedure for any alleged violations of HAVA's voting system requirements. *See* COMAR 33.01.05.01–.08 (providing an administrative process for the filing and adjudication of complaints alleging a violation of pertinent HAVA provisions).  The companies allege that their members, "and volunteers of their organizations exhausted every administrative remedy known to them in advance of the 2022 general election," (ECF 16 ¶ 76), but as proof of that exhaustion provide the administrative complaint of an individual unconnected to Maryland Election Integrity or United Sovereign Americans (ECF 16-4).

¶ 167.)  Whether HAVA creates such an enforceable right or not, the companies cannot maintain a § 1983 action against the State Board.  The State Board, as a State agency, is not a "person" amenable to suit under § 1983.[4]  *Andrews v. Dep't of Pub. Safety & Corr. Serv.*, ___ F. Supp. 3d. ___, ___, 2024 WL 520038, Slip Op. at *9 (D. Md., filed Feb. 9, 2024).

Finally, the companies specify in the complaint that the State Board allegedly violated the NVRA.  (ECF 16 ¶¶ 34-38.) The NVRA contains a private cause of action, 52 U.S.C. § 20510(b)(1), but it is not available to the companies in this suit, 52 U.S.C. § 20510(b)(2).  The companies failed to transmit the prerequisite notice mandated by the NVRA, rendering a private cause of action under the NVRA unavailable to them.  *See e.g. Scott*, 771 F.3d at 836 ("[Appellant's] failure to provide notice is fatal to his [NVRA] suit."); *Judicial Watch v. Pennsylvania,* 524 F. Supp. 3d 399, 408-09 (M.D. Pa. 2021) ("Notice is a precondition to filing a suit under the NVRA.")

The companies allege that Ms. Sullivan "sent a notice of violation to MDSBE in a press release on November 8, 2023" and "attempted to bring apparent violations to the Baltimore County Board of Election (BCBOE) attention."  (ECF 16 ¶ 43-44.)  But the Baltimore County Board of Elections is not the State Board of Elections—they are

---

[4] While *Ex Parte Young*, 209 U.S. 123 (1908) permits suits against individual state officials for prospective injunctive relief, that exception does not apply here.  The companies have not sued to enjoin an individual official from undertaking any specific duty.  And the *Ex Parte Young* exception applies only to an official's enforcement of an unconstitutional state law.  *Eller v. Prince George's County Pub. Schools*, 580 F. Supp. 3d 154, 168 (D. Md. 2022).  The companies do not allege in this suit that a member of the State Board is violating HAVA by enforcing a provision of the Maryland Code or Code of Maryland Regulations.

legally distinct entities.  *Compare* Elec. Law §§ 2-101–2-102 (establishing a State Board with specified duties and powers) *with* Elec. Law §§ §§ 2-201–2-202 (establishing local boards of elections in each county with specified duties and powers).  And Ms. Sullivan's press release was just that—a press release.  (ECF 16-2.)  It was published before Maryland Election Integrity, LLC, existed. (*See* ECF 8-2.)  It was not addressed to or directed at the State Board.  (ECF 16-2.)  And it did not relate the alleged NVRA violations that the companies maintain in this suit.  (*Compare* ECF 16 ¶¶ 34-39 *and* ECF 16-2.)  The companies' allegations of notice therefore fail to suffice.

In the operative complaint, the companies further urge this Court to issue a writ of mandamus under 28 U.S.C. § 1361.  (ECF 16 ¶¶ 212-221.)  The request for the writ is the second basis upon which the companies assert that this Court has jurisdiction.  (ECF 16 ¶ 5.)  But this basis for jurisdiction fares no better than the other.  This Court's exercise of "original jurisdiction" to issue a writ of mandamus extends only to compelling "an officer or employee of the United States or any agency thereof to perform a duty."  28 U.S.C. § 1361.  The Maryland State Board of Elections is not an officer, employee, or agency of the United States.  And this Court "does not have jurisdiction to issue a writ of mandamus requiring state employees to act."  *White v. City of Annapolis*, 439. F. Supp. 3d 522, 544 (D. Md. 2020); *see also Gurley v. Superior Court of Mecklenberg County*, 411 F.2d 586, 587 (4th Cir. 1969).

None of the companies' claims, then, provide this court with the jurisdiction to hear and decide them. All that is cognizable before this Court are questions of state law.[5] This Court should dismiss the operative complaint for lack of subject matter jurisdiction. *Lovern*, 190 F.3d at 654.

## III. THE FACTUAL ASSERTIONS IN THE COMPLAINT LACK SUPPORT IN REALITY.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must plausibly allege a cause of action by containing "a short and plain statement" illustrating how the claimant is entitled to relief. Although the statement need not present "detailed" allegations, it must contain "sufficient factual matter." *Iqbal*, 556 U.S. at 678. Mere assertions "devoid of further factual enhancement" will not suffice. *Id.* (quotation omitted). And conclusory allegations about electoral irregularities, unsupported by plausible facts, also fail to suffice. *See Voters Organized for the Integrity of Elec. v. Baltimore City Elec. Bd.*, 214 F. Supp. 3d 445, 455-56 (D. Md. 2016)

For their claims relating to violations of federal law, the companies present this Court with factual allegations in the operative complaint that are "devoid of any reference to actual events." *Chambers,* 43 F.Supp.3d at 586 (citing *Hirst*, 604 F.2d at 844). The lynchpin factual allegations supporting the companies' NVRA and HAVA accusations

---

[5] The Maryland Code provides a cause of action in State court for "any act or omission relating to an election, whether or not the election has been held, on the grounds that the act or omission: (1) is inconsistent with this article or other law applicable to the elections process; and (2) may change or has changed the outcome of the election." Elec. Law § 12-202(a). This cause of action is available to every "registered voter" in the State. *Id.*

present this Court with drastic numbers of "apparent" errors in Maryland's voter registration roll and in the results of Maryland's 2020 and 2022 elections. (ECF 1 ¶¶ 23, 45-46.)  But these numbers have no basis in reality.

From the materials attached to the companies' operative complaint, the numbers are artificial assertions with no underlying methodology.   And from the materials attached to the companies' motion for injunctive relief (*see* ECF 20-8 & 20-19), the numbers are the result of a demonstrably flawed analysis (*see* ECF 13-1).

Maryland's voter registration rolls do not have 79,392 "apparent registration violations"; nor do the results of Maryland's elections in 2020 and 2022 have approximately 90,000 "apparent voting system errors" between them.[6]  *See* Md. State Bd. Of Elec., *State of Maryland: Voter Registration List Maintenance*, accessible at https://elections.maryland.gov/voter_registration/list_maintenance.html (last accessed Apr. 18, 2024); *see also* Md. State Bd. Of Elec., *2022 Gubernatorial Primary and General Elections: Post-Election Ballot Tabulation Audit*, accessible at https://elections.maryland.gov/voting_system/ballot_audit_plan.html (last accessed Apr.

---

[6] The companies here further conflate voting system errors with voter registration errors.  They assert that the voter registration system falls within HAVA's definition of a "voting system," subjecting the voter registration system to the error rates established at 52 U.S.C. § 21081(a)(5). (ECF 16 ¶ 62).  But HAVA does not treat a voter registration system as part of a voting system.  HAVA, at 52 U.S.C. § 21083 sets out requirements for voter registration systems separately from those established for voting systems.  And the error rates established for voting systems are expressly set for "counting ballots."  52 U.S.C. § 21081(a)(5).

The companies' allegations of voting system errors are therefore nothing more than a restatement of its allegations that the State's voter rolls contain errors. HAVA's error rates are not implicated in this suit.

18, 2024).   Nothing the companies have provided plausibly gives this Court, using its "judicial experience and common sense," a basis to draw an inference otherwise.  *Iqbal*, 556 U.S. at 679.  The companies' complaint fails to factually state a claim for a violation of federal law upon which any relief can be granted.

And the companies' state law claims fair no better.  In alleging that the State Board "did not review the source code for ES& S EVS 5.2.0.0." (ECF 16 ¶ 99), the companies support their allegation with a document from 2014 (ECF 1.3).  They fail, however, to relate that alleged shortcoming to the elections they challenge—2020, 2022, and, seemingly, 2024.  The companies also hypothesize potential flaws with the State's voting equipment (ECF 16 ¶¶ 121, 161-175); but acknowledge that the flaws were not extant in the conduct of the 2020 and 2022 elections (ECF ¶¶ 119, 125, 160).  Ultimately, the companies ask for federal declaratory relief on the general application of State election laws; but those State election laws do not grant the companies any individual, enforceable rights against the State.  And this Court could not impose a voting system on the State commensurate with the companies' demands.  (ECF 16 at 35-37.)  There therefore exists no "definite and concrete [dispute] . . . affecting the legal relations of parties with adverse interests" that is "amenable to specific, conclusive relief."  *Dyer v. Md. State Bd. Of Educ.*, 187 F. Supp. 3d 599, 609 (D. Md. 2016).

## CONCLUSION

The motion to dismiss should be granted and the companies' operative complaint

(ECF 16) should be dismissed.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Daniel M. Kobrin

_____

DANIEL M. KOBRIN
Federal Bar No. 30392
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
dkobrin@oag.state.md.us
(410) 576-6472
(410) 576-6955 (facsimile)

April 22, 2024

Attorneys for the Maryland State Board
of Elections