IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

MARYLAND ELECTION INTEGRITY, LLC, *et al.*,

    *Plaintiffs*

v.

MARYLAND STATE BOARD OF ELECTIONS

    *Defendant*

Case No.: 1:24-cv-00672-SAG

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Maryland Election Integrity, LLC, et al, plaintiffs, by Hartman, Attorneys at Law, and C. Edward Hartman, III, their attorneys, hereby file their Reply to the Defendant's Response to the Motion for Temporary Restraining Order and Preliminary Injunction.

### BACKGROUND

Plaintiffs have identified over 79,000 registration errors and problems with voting machines, including connection to the internet and the handling of undervotes, overvotes, and blank ballots, as well as the absence of the mandatory written reports that would clarify some of those issues. Based on these facts, plaintiffs seek a temporary restraining order and/or preliminary injunction by which a special master would be appointed to oversee the remediation of the Maryland voting system from registration to counting votes.

Plaintiffs have alleged that these facts and the applicable law require the issuance of a temporary restraining order and/or preliminary injunction, by which a structure will be created that moves the defendant towards compliance with state and federal law. Several legal vehicles are used, including but not limited to, a writ of mandamus and civil rights statutes.

The elements of injunctive relief include immediate and irreparable injury, likelihood of success on the merits, public interest, and a balancing of the relative inconvenience between the parties. These four factors are to be considered; these are not elements that each must be satisfied to a certain degree. Also, the first two factors are inversely related; the greater the immediate and irreparable injury, the smaller the likelihood of success on the merits is required to be shown, and vice versa. "There is a correlation between the likelihood of plaintiff's success and the probability of irreparable injury to him. If the likelihood of success is great, the need for showing the probability of irreparable harm is less. Conversely, if the likelihood of success is remote, there must be a strong showing of the probability of irreparable injury to justify issuance of the injunction. Of all the factors, the two most important are those of probable irreparable injury to the plaintiff if an injunction is not issued and likely harm to the defendant if an injunction is issued. If, upon weighing them, the balance is struck in favor of plaintiff, a preliminary injunction should issue if, at least, grave or serious questions are presented." Maryland Dept. of Human Res. v. U.S. Dept. of Agric., 617 F. Supp. 408, 414 (D. Md. 1985), vacated, 976 F.2d 1462, 1992 WL 221594 (4th Cir. 1992) (quoting North Carolina State Ports v. Dart Containerline, 592 F.2d 749, 750 (4th Cir.1979)). The same was quoted in Sohmer v. Kinnard, 535 F. Supp. 50 (D. Md. 1982).

Also, as stated in Lerner v. Lerner, 306 Md. 771, 784, 511 A.2d 501, 507–08 (1986):

"The importance of probability of success increases as the probability of irreparable injury diminishes, *Delaware River Port Authority v. Transamerican Trailer Transport*, Inc., 501 F.2d 917, 923 (3d Cir.1974); *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir.1974); *District 50, United Mine Workers v. United Mine Workers*, 134 U.S. App. D.C. 34, 412 F.2d 165, 168 (1969); *Packard Instrument Co. v. ANS, Inc.*, 416 F.2d 943 (2d Cir.1969); and where the latter may be characterized as simply "possible," the former can be decisive. Even so, it remains

merely one "strong factor" to be weighed alongside both the likely harm to the defendant and the public interest. *Dino De Laurentiis Cinematografica, SpA. v. D–150, Inc.*, 366 F.2d 373, 375 (2d Cir.1966) (quoting 3 Barron & Holtzoff, Federal Practice & Procedure, § 1433 at 493 (1958))."

Defendant responds as follows: the plaintiffs did not tell us soon enough.

In addition to failing to contradict a single fact, this one position is fundamentally false, as evidenced by the affidavits of Christopher Gleason, Kate Strauch Sullivan, and David Morsbeger filed herewith. The defendant was made aware of the deplorable state of their voter rolls and the noncompliance of their voting machines for several years before this case was brought. Of course, as admitted by the counsel for Defendant, he and his client have been aware of the complaints since this case was filed in March of this year. Notwithstanding the constant communication, demands, and requests, the Board of Elections has taken no action, except to fight the litigation.

Perhaps most troubling is the fact that Mr. Kobrin himself was contacted on November 9, 2023, by Christopher Gleason about these issues. Mr. Kobrin, counsel for the defendant, seems to have forgotten this fact while making his arguments. His representations to the contrary are disturbing, to say the least.  See affidavit of Christopher Gleason.

Federal and state election laws are not optional; nor is notification and litigation by Maryland citizens a condition precedent to lawful elections. The defendant government agency complains that the plaintiff private citizens did not tell them soon enough to comply with the law. Nowhere in judicial history is this necessary.

Defendant's response contains campaign style hyperbole, including an assertion that the plaintiffs do not want Maryland to have elections, and that the lawsuit seeks to "disenfranchise"

3

the voters of Maryland. According to the Board of Elections, compliance with the law is disenfranchising. These positions of the defendant are without legal merit of any kind.

What defendant does not say is perhaps more telling than what it does say. Nowhere in the Response to the TRO or the Affidavit of Catherine Berry is there a denial of the factual allegations of the plaintiff. The defendant brazenly admits that it has 79,000 voter roll errors and denies anyone can tell them to fix it.

As more fully set forth below, there is an immediate and irreparable injury, the likelihood of success is substantial, the public interest is overwhelming, and the inconvenience to the defendant is irrelevant and self-created. Whether the defendant is able to completely fix the system by the primary election is not an argument to beginning the process that should have started years ago. Better late than never.

Defendant fails to contradict that consideration of each of these elements calls for an order for the BoE to comply with state and federal law and the appointment of a special master to monitor its efforts to remedy its failings.

## ARGUMENT

**DEFENDANT ADMITS AN IMMEDIATE AND IRREPARABLE INJURY.**

Defendant asserts that it will be time consuming to comply with state and federal law; however, defendant does not describe its efforts to fix their situation. The position asserted by the Board of Elections is that they aren't planning to take any action, because it's too hard. As shown by the affidavits filed herewith, the BoE has been on notice for years from private citizens. Of course, it is axiomatic that notice from citizens is not required for an agency to comply with the

law. Similarly unnecessary is the statement that the defendant's ignorance of the condition of the voting system is not a defense.

The non-compliance of the Maryland voting system with state and federal law is indisputably an immediate and irreparable injury. The right to vote is indisputably one deserving of the highest protection. The immediacy of that injury is so great that defendant uses it as its only "defense", asserting only that they cannot fix the problems in time for the primary election in May. Apparently, defendant believes this gives them a total pass on complying with the law. It does not.

Approximately six months after the primary election is the general election. Every two years after that, additional elections will be held. The sooner that the Board of Elections is ordered to begin complying with the law, the injury will be reduced. Plaintiffs agree that time is of the essence. Instead of filing motions and responses, defendant should be making efforts to remedy the deplorable state of the voting system in Maryland.

**THERE IS SUFFICIENT LIKELIHOOD OF SUCCESS ON THE MERITS.**

The laws of HAVA and NVRA are beyond dispute; defendant agrees. That defendant is not in compliance with these statutes is also undisputed. There is no argument that defendant must comply with these laws. Given that the injury is so immediate and irreparable that the defendant uses that status as its only defense to the Motion for TRO, the likelihood of success need not be substantial. Yet, given that there is no dispute that defendant is violating the law, this burden is more than met.

**PUBLIC INTEREST WEIGHS HEAVILY IN FAVOR OF ISSUING THE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.**

The third factor to be considered is the public interest. In private declaratory and injunctive actions, this factor is often of minimal value; however, it is perhaps the most significant factor in

this case. The Maryland State Board of Elections is publicly proclaiming that it has no intention of remedying the nearly eighty thousand registration errors and flawed reporting on the validity of the voting machines. The Attorney General's office, rather than doing its job to make the agency comply, is defending the Board of Elections choice to flaunt their failures and ignore years of efforts to get them to comply.

The public interest in making sure that our elections comply with federal and state law could not be overstated. The citizenry of Maryland must be able to trust that each vote counts as it was intended by each citizen. Without correcting the errors in the voting system, this trust cannot exist. The Board of Elections' response to this lawsuit further erodes that trust.

Consideration of the public interest weighs heavily in favor of granting a temporary restraining order and preliminary injunction, appointing a special master, and moving the Maryland voting system in the right direction.

**BALANCING OF THE INCONVENIENCES DOES NOT HELP THE DEFENDANT.**

The defendant's response in opposition to the relief requested is simple: it is not convenient for the Board of Elections to comply with the law. Thankfully, this response has never been recognized as an excuse to violate the law. It cannot be a valid excuse for this defendant, either. It may take a lot of work to get the system in compliance with the law; however, it is the defendant who created this situation by ignoring the condition of their voting system, even after being advised of the problems by Mr. Gleason, Ms. Sullivan, and Mr. Morsberger, as shown by the affidavits filed herewith.

**LACHES IS NOT A DEFENSE TO COMPLYING WITH THE LAW**

Defendant correctly cites the doctrine of laches as "an equitable doctrine that can be raised by a defendant as an affirmative defense to a claim and requires that the defendant show '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Voters Organized for the Integrity of Elections v. Balt. City Elections Bd.*, 214 F. Supp. 3d 448, 454.

While the doctrine of laches is correctly defined, it is inapplicable where the defendant is already required by law to perform the acts that the Complaint seeks. The Maryland Board of Elections is already required to comply with state and federal law. Notification, demand, and litigation by private citizens is not a condition precedent to lawful elections.

In the aforementioned case cited by Defendant, laches was found to bar the Plaintiffs' claim because "they delayed serving Defendants until six weeks after the complaint was filed." *Id*. Here, there was no delay on the plaintiffs' part. Undersigned counsel even attempted to avoid litigation entirely to work with the MDSBE to address their violations. The relevant email to counsel for the MDSBE is attached as **Exhibit A**. More compelling are the efforts of Christopher Gleason, Kate Sullivan, and David Morsberger over the past several years to get the BoE to comply. It is disingenuous to now assert that it is too late for them to do anything.

Defendant also cites *Curtin v. Va. State Bd. Of Elections*, 463 F. Supp. 3d 653 (2020), in which Plaintiff's attempt to be granted a preliminary injunction was barred by laches because they waited two months to challenge Covid-19 Guidance which would increase the number of absentee ballots distributed in the state. Here, Plaintiffs gathered years of data on the Maryland state voter rolls, analyzed that data and found 79,349 registration violations, which they then turned into a report usable by the MDSBE. The data was in a comprehendible format long

before filing Plaintiffs complaint was filed, and BOE was on notice long before the lawsuit was filed.

Challenging COVID-19 guidance two months after it was published and after absentee ballots were already mailed is vastly different from Plaintiffs taking time to analyze the voter registration database of the entire state of Maryland. Further, COVID-19 emergency guidelines are presumably a one-time event. Maryland has elections every two years; the plaintiffs merely ask that the Board of Elections comply with the law. It is never too late to so require, and actions like these should not be necessary.

The doctrine of laches in its conclusive effect is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-349 (1944). As such, the doctrine of laches in its historical sense was developed to promote justice, not injustice. Defendant is attempting to use this doctrine to avoid compliance with the law, thus promoting injustice in Maryland elections. Plaintiffs are asking for injunctive relief for the Primary and General Elections, but these are not the last elections Maryland will hold.

It is important to note Plaintiffs request injunctive relief not only for the Maryland Primary Election, but for the Maryland General Election, as well. Defendant cites *Voters Organized*, 214 F. Supp. 3d at 455 which states, "obviously, the results of a primary election are a necessary prerequisite for composition of a general election ballot." Plaintiffs could not agree more, which is why they brought this suit about two months before the primary election.

In a case with as much data as this, diligence in making sure the data is correct before filing a complaint is of the utmost importance. The report created by members of Maryland

Election Integrity, LLC Kate Sullivan and David Morsberger ("The Report") was sent to the MDSBE on February 27, 2024. *See* David Morsberger & Katherine Strauch Sullivan, *Restoring Faith in Maryland's Elections* (Feb. 27, 2024) (attached to the Amended Complaint). Plaintiffs' Complaint was filed on March 6, 2024. The time between the finalization of Kate and David's report and the filing of the complaint shows a great amount of diligence on the part of Plaintiffs to have the issues they raise addressed. Defendant, on the other hand, has shown an absolute absence of diligence. It has a duty to avoid such errors but has avoided correcting them for years now. Instead of working on them now, they file motions in opposition.

Defendant contends that Plaintiffs data was collected by November 23, 2023. It is not clear under what form of logic that this represents a defense for defendant from complying with the law. The obvious point is that the plaintiffs found the errors but defendant either found and ignored them or did not try to find them at all. This argument of the defendant becomes more disingenuous once the affidavits of Mr. Gleason, Ms. Sullivan, and Mr. Morsberger are read, making clear that the Board of Elections has been on notice for years.

Defendant concedes that the Plaintiffs' Amended Complaint does not include new factual allegations. Therefore, Defendant has had at least 50 days to understand the issues contained in Plaintiffs' Complaint and nearly 60 days to review the data contained in The Report. These figures do not include the numerous presentations and communications with state and local board of election employees and officials raising the issues, as outlined in the affidavits of Kate Strauch Sullivan and David Morsberger filed herewith, dating back to 2022. Ironically, on November 9, 2023, over 6 months ago, Christopher Gleason, a member of co-plaintiff United Sovereign America, emailed with current counsel for BOE, Dan Kobrin. Accordingly, Mr.

9

Kobrin has been aware of the complaints and demands for compliance for more than six months. See affidavit of Christopher Gleason filed herewith. Plaintiffs have shown great diligence in pursuing this matter, gathering the data, and bringing the data to the attention of MDSBE and Local Boards of Elections in the hopes it would be addressed short of litigation. Accordingly, there has been no surprise to the Defendant, and Plaintiffs have not slept on their rights.

Further, Plaintiffs have attempted to use administrative channels to address the issues rather than pursue litigation, rendering any time they waited to file the complaint reasonable. This is confirmed by 52 U.S.C § 20510 which allows for a private right of action for violations of NVRA. 52 U.S.C. § 20510 says a person who is aggrieved by a NVRA violation must send notice to the chief election official of the state and "[i]f the violation is not corrected within 90 days after receipt of a notice… the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." Kate Sullivan sent a notice of violation on November 8, 2023, directed to and naming the state board of elections. February 8, 2024 is 90 days after the notice was sent. During this time, and the following 19 days, Plaintiffs were putting data into a report in a format the MDSBE could understand and use to address the violations. Abiding by the remedies and timeline set forth in NVRA is reasonable and Defendant is attempting to use this same provision in their Motion to Dismiss to say Plaintiffs claim is barred. Here, Defendant is claiming Plaintiffs waited too long to file their complaint; in their Motion to Dismiss they are claiming Plaintiffs did send the notice of violation and wait the 90 days.

Plaintiffs were diligent with their resources because they gathered volunteers to collect data and used volunteers for PIA requests. There is no possible way the MDSBE did not know of

Plaintiffs claims before this suit. This is further bolstered by the audit conducted by the Office of Legislative Audits, the findings of which were published in October 2023. *See* Office of Legislative Audits, Audit Report: State Board of Elections (Oct. 2023), available at https://www.marylandmatters.org/wp-content/uploads/2024/11/SBE23.pdf (last accessed Apr. 22, 2024). The findings of this audit **prove** inaccuracy in the voter registration records in Maryland. Plaintiffs simply took their analysis a few steps further.

Any resulting prejudice upon Defendant is self-induced. The second element of laches, prejudice, "is demonstrated by a disadvantage on the part of the [D]efendant[s] in asserting or establishing a claimed right or some other harm caused by detrimental reliance on the [P]laintiff[s'] conduct." *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). The MDSBE has no right to conduct and certify elections with known violations of the law. This is apparently the right they are asserting that was disadvantaged. Furthermore, Defendant was not relying on the Plaintiff organizations to administer the Primary Election. Accordingly, there is no prejudice to the Defendant caused by Plaintiffs.

**A PRELIMINARY INJUNCTION IS PROPER, WHETHER THAT IS NOW OR BEFORE THE PRESIDENTIAL GENERAL ELECTION**

Defendant contends that Plaintiffs seek a mandatory injunction altering the status quo. This type of injunction does "not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). First, it is extremely rare that actions for declaratory and injunctive relief are brought to maintain the status quo. Rather, there is, by definition, a situation presenting an immediate and irreparable injury that must be addressed before a trial on the merits can occur. Nevertheless, to address defendant's argument, the status

quo in Maryland is violation of federal and state law. Preserving the status quo is not in the best interest of Maryland voters and citizens.

Defendant misinterprets the goals of the Plaintiff organizations. The organizations seek to clean up the voter rolls in Maryland, insure the voting machines are valid, and that votes are consistent with the actual intent of the voters. The voting system and voting machines in place are out of compliance due to human errors. Plaintiffs are not necessarily asking this court to alter the election rules on the eve of an election. *Purcell v. Gonzalez,* 549 U.S. 1 (2006). Plaintiffs are asking the MDSBE to do their job.

Updating the voter rolls is supposed to be done on an ongoing basis by the MDSBE and embarking on a mass effort to update them will not tax the voting system or upcoming elections. Plaintiffs acknowledge that complete correction cannot occur in an instant; however, the defendant is refusing to even begin the process. Instead of fighting this injunction, defendant should be inquiring of the plaintiff organizations how they can help.

The standard courts employ when determining if a preliminary injunction should be granted is whether the potential harm to the moving party is irreparable; the nature of the harm the opponent would face were the injunction granted; how others would be affected by the grant or denial of the injunction, including the impact on the public interest; and whether, in view of its position and evidence, the moving party is likely to succeed on the merits of the claim when the case comes to a full trial. *Ramirez v. Collier*, 142 S.Ct. 1264, 1275 (2022); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). To cover the initial step, violations of federal and state election laws affecting Plaintiffs' right to vote surely constitute an irreparable harm.

The Board of Elections will have to come into compliance with state and federal election laws if this injunction is granted. "There is no question about the legitimacy or importance of a State's interest in counting only eligible voters' votes." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 185 (2008) *See also Purcell v. Gonzalez,* 549 U.S. 1, 5, 127 S. Ct. 5, 166 L. Ed. 2d 1 (2006) (noting that "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy.") Abiding by the law is not a harm to them; it is an indisputable duty the MDSBE owes to Maryland voters. This is bolstered by Plaintiffs petitioning for a writ of mandamus in addition to injunctive relief. There would be a positive effect on Maryland voters and the public interest if this injunction was granted before the primary and general elections because it would resolve, partially resolve, or at least begin to resolve numerous issues with the current voting system and further prevent violations from arising again. The balance of equities tips in favor of Plaintiffs as their fundamental right to vote is being affected.

Plaintiffs have set forth substantial evidence that the MDSBE violated provisions of HAVA specific to voting system error rates and blank ballots. The error rate claim stems from inaccurate voter registration records under the NVRA. The blank ballot claim stems from actual numbers of blank ballots observed in the Maryland cast vote records and capabilities of the Election Systems & Software ("ES&S") voting system in place. The blank ballot claim can be easily verified and cured before the primary election.

The NVRA violation has been denied by the MDSBE, but not meaningfully. The MDSBE has attempted to dismiss this claim by attacking the analysis contained in The Report but has not meaningfully refuted any of the findings. A portion of these findings was brought to the Anne Arundel County Board of Elections attention, out of a sample size of 20 violations given

to them from Kate and David's analysis, all 20 were confirmed. Further, the MDSBE continues to delay this case arguing jurisdictional issues with Plaintiffs' claims, yet does not address the real issues presented.

The NVRA violations can, at the very least, begin to be remedied without taxing the voting system in Maryland. The Declaration of Katherine Berry attached to Defendant's Opposition to the Motion for Temporary Restraining Order and Preliminary Injunction primarily details how long it would take for a new voting system to be employed in Maryland. A new voting system would cure some issues Plaintiffs raise, but implementing new voting machines is not a necessary first step to resolve the issues. The first step is to cure the inaccuracies in the voter registration records. Curing these is a first step in addressing the error rate violations under HAVA. Plaintiffs have provided the data to the MDSBE and have been more than willing to work with them to fix this in a cooperative fashion rather than an adversarial one. Plaintiffs are more interested in having these issues remedied than having a battle with the MDSBE.

Furthermore, the possibility of modems currently being installed on the voting machines can be easily verified and fixed as well. This would only require notice to the Local Boards of Elections to remove modems if they are attached and conduct proper testing before returning the machines to service. Each machine is programmed to print a report that states whether a modem is attached and describes how overvotes, undervotes, and blank ballots are treated. The plaintiffs filed PIA requests to get these reports; BOE says they don't have any. That means the voting machines are malfunctioning and are not valid.

Once again, the MDSBE has not refuted any of Plaintiffs' substantive claims except on jurisdictional grounds. Based on the lack of rebuttal on the substantive claims raised in

Plaintiffs' Complaint, Plaintiffs are likely to succeed on the merits of their claims when the case comes to a full trial.

### DEFENANTS DO NOT REBUT THE FACT THAT ISSUANCE OF A WRIT OF MANDAMUS IS PROPER

The MDSBE does not even attempt to rebut the fact that a writ of mandamus is proper. A writ of mandamus will compel the Defendant to perform a duty owed to the Plaintiffs. That duty in the broad sense is administering elections free of errors and legal violations. In the narrower sense it can be applied to each law being violated by Defendant that confers a duty to Plaintiffs.

### THE MOTION TO DISMISS IS NOT RIPE; ISSUES RAISED THEREIN ARE NOT BEFORE THE COURT. NEVERTHELESS, THOSE ARGUMENTS ARE WITHOUT MERIT.

Defendant makes a passing reference to its Motion to Dismiss, without actually raising or briefing the issues. The reference to the Motion to Dismiss asserts in conclusory fashion that citizens cannot seek judicial assistance in making a government agency follow the law, because HAVA does not specifically provide for a "private cause of action". This would be the elimination of the right to pursue a writ of mandamus. Further, having brought many cases for declaratory and injunctive relief against government agencies and executives, the subject of the complaint, whether it be a statute, plat, ordinance, executive order, or regulation, never contains an express statement that persons affected cany seek judicial enforcement. To suggest that a federal statute requires specific mentioning of a "private cause of action" is a red herring, an attempt to require the plaintiffs to prove a negative.

Further, since the Attorney General is not going to require the BOE to act lawfully, such a ruling would mean that the Board of Elections, or any other agency for that matter, can ignore the law and act however it wishes, provided that the majority of the members are of the same political

party as the Attorney General and the Governor. Such a ruling from this court would be license to all to ignore the law with impunity.

Defendant asserts no factual inadequacies in the Complaint or in the TRO, instead Defendant clings to a baseless argument that Plaintiffs do not have standing.

First, Defendant erroneously argues that Plaintiffs failed to state a claim upon which relief could be granted. "When both subject matter jurisdiction of federal court and substantive claim for relief are based on federal statute, dismissal for lack of subject matter jurisdiction is proper only when allegations of complaint are frivolous[.]" *USCS Fed Rules Civ Proc R 12* (citing *Health Cost Controls v. Skinner*, 44 F.3d 535, 18 Employee Benefits Cas. (BNA) 2830, 1995 U.S. App. LEXIS 111 (7th Cir. 1995), corrected, 1995 U.S. App. LEXIS 1118 (7th Cir. Jan. 20, 1995)). Defendant has made no claim that the allegations are frivolous, instead admitting to voter roll inaccuracies in its attempt to argue nobody can demand them to fix it.

Additionally, in election and voting rights challenges, a plaintiff's standing is naturally entwined with their "individual and personal" right to vote. *Gill v. Whitford*, 585 U.S. 48, 138 S. Ct. 1916, 201 L. Ed. 2d 313 (2018) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). "A citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution, when such impairment resulted from dilution[.]" *Baker v. Carr*, 369 U.S. 186, 208, 82 S. Ct. 691, 705, 7 L. Ed. 2d 663 (1962) (citing *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368). As stated in *Baker v. Carr*, 369 U.S. 186, 208, 82 S. Ct. 691, 705, 7 L. Ed. 2d 663 (1962):

> It would not be necessary to decide whether appellants' allegations of impairment
> of their votes…will, ultimately, entitle them to any relief, in order to hold that
> they have standing to seek it. If such impairment does produce a legally
> cognizable injury, they are among those who have sustained it. They are asserting
> "a plain, direct and adequate interest in maintaining the effectiveness of their
> votes," *Coleman v. Miller*, 307 U.S. at 438, 59 S.Ct. at p. 975 not merely a claim

of "the right possessed by every citizen 'to require that the government be administered according to law.'" *Fairchild v. Hughes*, 258 U.S. 126, 129, 42 S.Ct. 274, 275, 66 L.Ed. 499[.]. **They are entitled to a hearing and to the District Court's decision on their claims** (emphasis added). "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an Injury." Marbury v. Madison, 1 Cranch 137, 163, 2 L.Ed. 60.

Nevertheless, "[a]n organizational plaintiff can satisfy the standing requirements in two ways: either injury in its own right, or injury as a representative of its members." *Voto Latino v. Hirsch*, ___ F. Supp. 3d. ___, ___, 2024 WL 230931, *9 (M.D.N.C. 2024). Representational standing exists when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). The interests at stake, specifically state and federal election law violations, and the effect on Plaintiffs, are germane to Maryland Election Integrity's purpose. There is no plausible reason for Defendant to cling to an argument on standing in its Opposition to the Motion for Temporary Restraining Order and Injunction Relief when: (1) Plaintiffs have standing and (2) the issue of standing is ripe as Plaintiffs' response to Defendant's Motion to Dismiss is not yet due.

Instead of providing why it believes Plaintiffs would not be able to succeed on the merits of the Complaint, Defendant again refers to the Motion to Dismiss to claim that there is no cognizable federal question, yet another issue that is ripe as no response to the Motion to Dismiss is due at this time. HAVA does not preclude citizens from requesting declaratory judgment when a government agency is violating the law with which it must comply. 42 U.S.C. § 1983 "provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured

by the Constitution and laws' of the United States" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002), of which the right to vote is one.

The relief sought is simply a requirement that Defendant comply with the law, a Writ of Mandamus. No specific language in the statute is required. Courts have long held that "administrative agencies do not possess the discretion to avoid discharging the duties that Congress intended them to perform." *Yue Yu v. Brown*, 36 F. Supp. 2d 922, 931 (quoting *Forest Guardians*, 131 F.3d 1309, 1998 WL 889368 *8). As such, "a court may require an agency to take action upon a matter[.]" *Id*. (quoting Attorney General's Manual on the Administrative Procedure Act, at 108 (1947). It is clear from Plaintiffs affidavits that despite years of demanding action, BOE will not do anything, thus a Writ of Mandamus is appropriate in order to ensure action by the BOE.

## CONCLUSION

It is clear from the Amended Complaint, Motion for Temporary Restraining Order and Preliminary Injunction, as well as the Reply to Defendant's Response, and the affidavits of Mr. Gleason, Mr. Schoeppner, Ms. Sullivan, and Mr. Morsberger, that the plaintiff is willing to help right the ship and move towards elections that are safe, secure, and in compliance with federal and state law.

The defense that there is no time to bring into compliance something as critical as our election system, when fundamental rights are on the line, is nonsensical. This defense tends to show that the MDSBE knows they are out of compliance and is further refusing to bring the voting system back into compliance. It actually supports Plaintiffs' argument that the MDSBE knows the issues are present and that they are, once again, fighting the fact that they must fix them. They have already done this once with the Office of Legislative Audits. Unfortunately, the MDSBE would rather fight Plaintiffs than comply with their duties, which are clearly laid out for them.

The MDSBE knew of discrepancies in the voter rolls and voting machines and chose not to address the discrepancies. Plaintiffs acknowledge the Presidential Primary Election process has begun but the actual election has not. Plaintiffs cannot agree that this precludes review of the issues presented and that at least some of the issues can be remedied before the Primary Election. The Presidential General Election is sufficiently far away for this court to review the issues presented by Plaintiffs more fully. Although Plaintiffs have been diligent and the prejudice to the MDSBE is self-induced, Plaintiffs acknowledge the impact this suit could have on Maryland elections. Plaintiffs only want the issues and violations they allege addressed, and BOE should get started immediately.

Respectfully submitted,

Date: April 29, 2024

HARTMAN, Attorneys at Law

By: /s/ *C. Edward Hartman, III*
C. Edward Hartman, III, Bar No. 07716
116 Defense Highway, Suite 300
Annapolis, Maryland 21401
Telephone: (410) 266-3232
Facsimile: (410) 266-5561
Email: Ed@Hartman.law
*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of April, 2024, I served a copy of the foregoing Reply to the Defendant's Response to the Motion for Temporary Restraining Order and Preliminary Injunction by electronic filing to:

Daniel Kobrin
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
dkobrin@oag.state.md.us
*Attorney for Defendant*

Leah J. Tulin
BRENNAN CENTER FOR JUSTICE
AT NYU SCHOOL OF LAW
1140 Connecticut Avenue NW, Suite 1150
Washington, DC 20036
tulinl@brennan.law.nyu.edu

/s/ *C. Edward Hartman, III*
C. Edward Hartman, III, Bar No. 07716