IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND ELECTION INTEGRITY, LLC, *et al.*, | * |
| *Plaintiffs* | * |
| | * Case No.: 1:24-cv-00672-SAG |
| v. | * |
| MARYLAND STATE BOARD OF ELECTIONS | * |
| *Defendant* | * |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Maryland Election Integrity LLC, a Maryland limited liability company, and United Sovereign Americans, Inc., a Missouri nonprofit corporation, Plaintiffs, by Hartman, Attorneys at Law, and C. Edward Hartman, III, hereby files this Response to Defendant's Motion to Dismiss, and in support thereof states:

## Table of Contents

ARGUMENT ............................................................................................................................. 1

    I.     DEFENDANT ERRONEOUSLY ARGUES THAT PLAINTIFF FAILS TO STATE A CLAIM UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) AS PLAINTIFFS' ALLEGATIONS ARE BASED ON SUFFICIENT FACTS AND DATA..……………………1

    II.    THE COMPLAINT ESTABLISHES SUBJECT MATTER JURISDICTION BY ALLEGING STANDING AND PLEADS A COGNIZABLE FEDERAL QUESTION .............................. 2

        A.  Plaintiffs Have Alleged Standing in their Well-Pleaded Complaint ................................ 2

        B.  Plaintiffs Have Pleaded Cognizable Federal Questions in The Complaint ........................ 8

    III.   DEFENDANT SUMMARILY DENIES PLAINTIFFS' CLAIMS WHILE PROVIDING NO EVIDENCE TO THE CONTRARY ................................................................................ 15

**I.     DEFENDANT ERRONEOUSLY ARGUES THAT PLAINTIFF FAILS TO STATE A CLAIM UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) AS PLAINTIFFS' ALLEGATIONS ARE BASED ON SUFFICIENT FACTS AND DATA**

Defendant erroneously argues that the Complaint fails to meet the requirements set forth in Federal Rule of Civil Procedure 12(b)(6) by claiming that the Complaint contains conclusory factual allegations. Defendant cites to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) motions, but makes no actual argument as to how it is applicable here.

Plaintiff is not required to prove factual allegations to overcome a 12(b)(6) motion. CompuSpa, Inc. v. IBM, 228 F. Supp. 2d 613, 624-625. When ruling on a motion under Rule 12(b)(6)…the court must 'accept the well-pled allegations of the complaint as true,' and 'construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.'" Signal Hill Capital Group LLC v. CMO Int'l ApS, 2014 U.S. Dist. LEXIS 81967 (citing Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997)). "To survive a motion to dismiss, the factual allegations of a complaint 'must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). All claims set forth in the Complaint for Declaratory Judgment and Injunctive Relief (the "Complaint") contain facts concerning the current systems in place used for the administration of elections in Maryland. All claims made in the Complaint are supported by data and other forms of evidence, reflected as exhibits attached to the Complaint, Motion for Temporary Restraining Order and Injunctive Relief, and in the Affidavits of David Morsberger, Harry Haury, and Chris Gleason, all of which have been served on Defendant. None of the claims

contained in the Complaint are mere legal conclusions, they are based on evidence that demonstrates that the claims are plausible.

Defendant erroneously argues that subject matter jurisdiction is not established based on their erroneous allegation that the Complaint failed to state a claim upon which relief could be granted. As evidenced above, the Complaint does state a factual claim upon which relief can be granted. "When both subject matter jurisdiction of federal court and substantive claim for relief are based on federal statute, dismissal for lack of subject matter jurisdiction is proper only when allegations of complaint are frivolous[.]" USCS Fed Rules Civ Proc R 12 (citing Health Cost Controls v. Skinner, 44 F.3d 535, 18 Employee Benefits Cas. (BNA) 2830, 1995 U.S. App. LEXIS 111 (7th Cir. 1995), corrected, 1995 U.S. App. LEXIS 1118 (7th Cir. Jan. 20, 1995)).

## II. THE COMPLAINT ESTABLISHES SUBJECT MATTER JURISDICTION BY ALLEGING STANDING AND PLEADS A COGNIZABLE FEDERAL QUESTION

### A. Plaintiffs Have Alleged Standing in their Well-Pleaded Complaint

Defendant argues that neither of the organization Plaintiffs have standing. They claim individual members of Maryland Election Integrity have not demonstrated standing to sue in their own right, which is a prerequisite to representational standing. They also allege that the injury to Plaintiffs is a generalized grievance.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In election and voting rights challenges, a plaintiff's standing is naturally entwined with their "individual and personal"

right to vote. Gill, 138 S. Ct. at 1929 (quoting Reynolds v. Sims, 377 U.S. 533, 561 (1964)). "'[V]oters who allege facts showing disadvantage to themselves as individuals have standing to sue to remedy that disadvantage." Id. (quoting Baker, 369 U.S. at 206)). "A plausible allegation of an increased risk of fraud should, by itself, be sufficient for the threshold question of standing, at least in suits initiated before the election." Steven J. Mulroy, *Baby & Bathwater: Standing in Election Cases After 2020*, 126 DICK. L. REV. 9 (2021). Plaintiffs were required to allege facts conferring them with standing in the Complaint, which was done.

Katherine Sullivan and David Morsberger are members of Maryland Election Integrity LLC. Both are registered voters in the state of Maryland, and both have spent considerable time and research creating a report to shed light on violations in an effort to help Defendant remedy them. *See* David Morsberger & Katherine Strauch Sullivan, *Restoring Faith in Maryland's Elections* (Feb. 27, 2024). In *Restoring Faith in Maryland's Elections*, facts are alleged regarding Maryland voter rolls and voting system errors, along with many other research and fact-based findings.

Kate and David have suffered many different injuries due to Defendant's nonadherence to state and federal election laws. First, they have dedicated their time, money, and resources into pinpointing issues with the voter registration rolls in Maryland. They were forced to pay for snapshots of the voter registration database because the MDSBE and its employees were not doing their job. Second, they have suffered psychologically due to nonadherence to the laws. Plaintiffs are people with a higher level of concern over the election process than the normal voter. Accordingly, their attempts to work with Defendant and Local Boards of Elections to address their findings have left them with the knowledge that the valid issues they have found will continue to be dismissed.

Third, they have found actual evidence that their votes are being diluted by ineligible voters in the voter rolls. "An allegation that fraud was 'certain to occur' should ordinarily be the kind of assertion that would give rise to standing" Steven J. Mulroy, *Baby & Bathwater: Standing in Election Cases After 2020*, 126 DICK. L. REV. 9 (2021). The audit done by the Office of Legislative Audits found that "[f]or the 2020 general election, SBE identified 134 voters who successfully voted multiple times and 1,371 voters who attempted to vote multiple times." It is a fact that there is a "diluting effect of illegal ballots." Gray v. Sanders, 372 U.S. 368, 380 (1963). Also, "[t]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." Reynolds v. Sims, 377 U.S. 533, 555, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964). Defendant implies that vote dilution is an exclusively racial issue, which is not the case.

Defendant also states that vote dilution is an insufficient theory of standing when based entirely on "the possibility of unlawful or invalid ballots being counted." Moore v. Circosta, 494 F. Supp. 3d 289, 312 (2020). Here, there is more than the possibility, unlawful and invalid ballots being counted has been documented by the Legislative Audit and Plaintiffs have documented it themselves. Plaintiffs have simply found that the registration violations and the invalid ballots being counted because of those violations goes further than just duplicate registrations, there are many more ways ineligible voters can be listed in the voter rolls and end up voting.

### *Blank Ballots*

Plaintiffs have also found that there is a great possibility their ballots will be cast blank or otherwise cast without showing their intent due to the configuration of voting machines. Seven (7) percent of the ballots cast in Baltimore County in the 2022 Gubernatorial Election were cast blank. See **Exhibit N-2** attached to the Amended Complaint. In Footnote 1 of Defendant's motion to dismiss Defendant claims Kate Sullivans threatened injury of casting a blank ballot is not sufficient. Claims implicating voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. F.E.C. v. Akins, 524 U.S. 11, 24 (1998). Defendant then argues that this injury is not fairly traceable and there is "no way this court could confidently redress it." This is patently false, considering the voting machines do not configure themselves and the solution is very simple – issue guidance to Local Boards of Elections requiring them to configure the voting machines to query voters whose ballots are about to be cast blank. The Election Systems & Software ("ES&S") guidelines specifically state how to configure the voting machines this way. Kate Sullivan has a seven (7) percent chance of casting a blank ballot due to the Defendant's violation of HAVA.

These facts and the data contained in *Restoring Faith in Maryland's Elections* illustrates Kate and David have "allege[d] facts showing disadvantage to themselves as individuals [and] have standing to sue to remedy that disadvantage." Id. (quoting Baker, 369 U.S. at 206)). Further, "pre-election lawsuits challenging error-prone voting machines, provisional ballot rules, voter registration procedures, and other election protocols in advance of the election have proceeded to the merits, despite the fact that in such cases, plaintiffs have not identified specific named voters who have been or will be disenfranchised." Steven J. Mulroy, Baby & Bathwater: Standing in Election Cases After 2020, 126 DICK. L. REV. 9 (2021). *See Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (2004); *Stewart v. Blackwell*, 444 F.3d 843 (6th Cir. 2006). Accordingly,

even though Kate and David have standing themselves, cases of this sort have proceeded to the merits absent a specific showing of standing.

Furthermore, Defendant can easily verify whether Kate and David voted in the preceding elections of which they claim to have no knowledge. This exemplifies the injury Plaintiffs have as well. Defendant can verify voter registrations and voting data yet is choosing not to, which is why Plaintiffs have taken it upon themselves to do so.

*<u>Representational Standing</u>*

Nevertheless, "[a]n organizational plaintiff can satisfy the standing requirements in two ways: either injury in its own right, or injury as a representative of its members." Voto Latino v. Hirsch, ___ F. Supp. 3d. ___, ___, 2024 WL 230931, *9 (M.D.N.C. 2024). Representational standing exists when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000).

As illustrated above, Kate and David have standing to sue in their own right. Defendant contends Maryland Election Integrity LLC was established for the purposes of filing a complaint. The purposes of the organization go far beyond Defendant's limited view. The purpose of the organization is to address issues with the voting system in Maryland and remedy them, therefore, restoring trust in elections. Accordingly, the interests at stake, specifically state and federal election law violations, and the effect on Plaintiffs, are germane to Maryland Election Integrity's purpose.

When injunctive relief is sought, participation of the individual members "is not normally necessary." Donald J. Trump for President, Inc. v. Bullock, 491 F. Supp. 3d 814, 827-828 (2020)

(quoting United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 546 (1996)). The Complaint seeks injunctive relief; therefore, participation of the members is not necessary. Further, "the third prong of the associational standing test is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy." United Food & Commer. Workers Union Local 751 v. Brown Group, 517 U.S. 544, 557 (1996). Plaintiffs have plead sufficient facts to allege representational standing and seek injunctive relief rather than money damages, thus meeting the requirements of representational standing.

### ***Plaintiffs Have Not Alleged a Generalized Grievance***

Defendant contends Plaintiffs allege a generalized grievance. The fact that "a harm is widely shared does not necessarily render it a generalized grievance." Novak v. United States, 795 F.3d 1012, 1018 (9th Cir. 2015). In fact, the Supreme Court has been clear that "where large numbers of voters suffer interference with voting rights" the interests related to that are sufficiently concrete to obtain the standing necessary to seek redress in an Article III Court. Donald J. Trump for President, Inc. v. Bullock, 491 F. Supp. 3d 814, 827-828 (quoting F.E.C. v. Akins, 524 U.S. 11, 24 (1998)) (holding that a claim implicating voting rights, "the most basic of political rights, is sufficiently concrete and specific" to establish standing). Plaintiffs allege in the Complaint large numbers of unsuspecting voters suffering interference with their voting rights, through various avenues. The interests of and harms to Plaintiffs are sufficiently concrete to obtain standing and seek redress.

Finally, Defendant contends United Sovereign Americans does not have an interest in this lawsuit and does not have standing. The Supreme Court has indicated that if one party to a lawsuit has standing, other entities can join as parties without having to satisfy independently the demands

of Article III, provided those parties do not seek a distinct form of relief from the party with standing. E.g., Horne v. Flores, 557 U.S. 433, 446 (2009). Maryland Election Integrity LLC has plead sufficient facts to allege standing and United Sovereign Americans does not seek a distinct form of relief, therefore, both organizational Plaintiffs have standing.

### B. Plaintiffs Have Plead Cognizable Federal Questions in The Complaint

*HAVA*

Defendants are correct in their contention that the Help America Vote Act ("HAVA") provides for two causes of actions. 52 U.S.C. § 21111 states "[t]he Attorney General **may** (emphasis added) bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, and 21083 of this title." This language is optional. It is clear that the Attorney General will not bring an action to correct the errors alleged in the Amended Complaint. Accordingly, the citizens must do so. The statute does not prohibit a court from declaring that violations have occurred and fashioning a remedy.

HAVA also requires states that receive HAVA funding to "establish and maintain state-based administrative complaint procedures." 52 U.S.C. § 21112 Maryland has created administrative complaint procedures required by HAVA, but they are ineffective. Plaintiffs and volunteers of their organizations have utilized the administrative complaint procedures to no avail. A sample HAVA complaint filed by a volunteer of Maryland Election Integrity is attached to the Amended Complaint as **Exhibit B-2.**

8

The responses to these complaints by the MDSBE have been wholly inadequate and necessitated Plaintiffs to pursue the violations of HAVA through other avenues. HAVA does not specifically restrict private causes of actions, it simply creates an avenue for private individuals to file complaints.

Further, Defendant cites a list of cases that have noted that HAVA does not create a private cause of action, including *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (2004). In this same case a private cause of action for violations of HAVA was found pursuant to 42 U.S.C. § 1983.

## *42 U.S.C. § 1983*

A private cause of action for HAVA violations may be found pursuant to 42 U.S.C. § 1983. *See Colon-Marrero v. Velez*, 813 F.3d 1, 22 (1st Cir. 2016) (A private cause of action under 42 U.S.C. § 1983 for HAVA violations was found because the provision provided enforceable voting rights and imposes binding obligations on state officials). 42 U.S.C § 1983 was partly aimed at constitutional deprivation through abuse and nonuse of authority by state officials. *Miller v. Carson*, 563 F.2d 757, 1977 U.S. App. LEXIS 5917 (5th Cir. 1977). Further, 42 U.S.C. § 1983 is the only way the HAVA violations will receive meaningful review. 42 U.S.C. § 1983 "provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103 (1989)) The Supreme Court has identified three factors to guide the inquiry into whether Congress conferred a right which may be enforced under 42 U.S.C. § 1983.

First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing v. Freestone*, 520 U.S. 329, 340-341 (1997) (citations omitted)

The full language of 52 U.S.C. § 21081(a)(5) states "The error rate of the voting system in counting ballots (determined by taking into account only those errors which are attributable to the voting system and not attributable to an act of the voter) shall comply with the error rate standards established under section 3.2.1 of the voting systems standards issued by the Federal Election Commission which are in effect on October 29, 2002." The *Voting System Standards* § 3.2.1 states:

> Voting system accuracy addresses the accuracy of data for each of the individual ballot positions that could be selected by a voter, including the positions that are not selected. For a voting system, accuracy is defined as the ability of the system to capture, record, store, consolidate and report the specific selections and absence of selections, made by the voter for each ballot position without error. Required accuracy is defined in terms of an error rate that for testing purposes represents the maximum number of errors allowed while processing a specified volume of data. This rate is set at a sufficiently stringent level such that the likelihood of voting system errors affecting the outcome of

an election is exceptionally remote even in the closest of elections.

These provisions taken together clearly intend to benefit voters in their ability to cast ballots without voting system errors. The right this section of the statute aims to protect is the right to vote in a manner unimpaired by errors that are out of the voter's control. This is made clear by the statute excluding voter errors from the error rate standards. The statute then states the voting system **shall** comply with the error rates set forth in the *Voting System Standards*. The word shall constitutes mandatory language rather than precatory and the *Voting System Standards* sets a maximum allowable error rate, also mandatory.

A private cause of action pursuant to 42 U.S.C. § 1983 can be found for violations of HAVA Section 301 which requires voting systems to "provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" 52 USC §21081(a)(1)(A)(ii). The adherence to this provision falls upon the state as voting systems do not program themselves. The violation of 52 USC §21081(a)(1)(A)(ii) is produced by the configuration of the voting machines.

Following the framework given above in *Blessing*, 520 U.S. 329, 340-341 (1997) a private cause of action under 42 U.S.C. § 1983 is proper. First, 52 USC §21081(a)(1)(A)(ii) is clearly intended to benefit the voter as it imposes a requirement for the voting system to allow for voters to correct errors to their ballots. Second, the statute provides that the voter shall have the opportunity to correct a deficient ballot before it is cast and counted, demonstrating voters have a clear right to cast a vote that shows their intent. As stated before, voting machines do not configure themselves, thus imposing a binding obligation on the State to make sure the voting system

provides voters the opportunity to correct deficient ballots. Third, the use of the word "shall" makes this a mandatory provision.

Defendant then argues it is not a "person" amenable to suit under § 1983. *Andrews v. Dep't of Pub. Safety & Corr. Serv.*, ___ F. Supp. 3d. ___, ___, 2024 WL 520038, Slip Op. at *9 (D. Md., filed Feb. 9, 2024). In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 700-701 (1978) the Court provided an extensive analysis of the legislative history of § 1983 and concluded that Congress intended the Act to apply to local government entities. A governmental entity is liable in its official capacity to suit under § 1983 only when entity is the moving force behind deprivation, thus requiring the entity's policy or custom to have played part in violation of federal law. Kentucky v. Graham, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114, 1985 U.S. LEXIS 86 (1985). To establish a municipal "policy," a plaintiff must prove that the municipal action was (1) taken with the requisite degree of culpability and (2) causally linked to the deprivation of a federal right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

This standard is met in the instant case. Plaintiffs notified the Defendant and its agents on numerous occasions of discrepancies and violations of federal and state law. See affidavits of Katherine Sullivan, David Morsberger, and Chris Gleason filed with Plaintiffs' Reply to Opposition to Motion for TRO. The Defendant and the Local Boards of Elections had a policy to deny Plaintiffs lawful requests for public information and to ignore potential federal law violations cited by Plaintiffs. A relevant county bulletin referring to PIA requests sent by Plaintiffs is attached as **Exhibit 1**. In the County Bulletin, Defendant states Plaintiffs PIA requests were fulfilled, which is not the case. This proves Defendant saw the requests and instructed the Local Boards of Elections not to respond.

Further, and more importantly, the Defendant amended 33.03.02.01B of the Code of Maryland Regulations ("COMAR") limiting the public's access to the voter registration records of the state for purposes Defendant deems related to the "electoral process." This was a policy change by Defendant to limit the public's access to records to which they are lawfully entitled. It also unlawfully imposes criminal penalties for use the Defendant deems not related to the "electoral process." It confirms Defendant has unlawfully made it more difficult for the public to access registration records. This also confirms there is a policy in place that is depriving Plaintiffs of their right to public information. This is causally related to all of the violations Plaintiffs claim related to voter registration records, voting machines, and error rates, which is ultimately impacting their fundamental right to vote. This all appears to be an attempt by Defendant to limit transparency in the electoral process.

### *NVRA*

Under the National Voter Registration Act, Defendant contends Plaintiffs did not follow 52 U.S.C. § 20510, by failing to provide a written notice of the violations to the chief election official of Maryland. 52 U.S.C. § 20510 provides for two methods of civil enforcement. The first is an action by the Attorney General for declaratory and injunctive relief. The second is a private cause of action with some requirements. 52 U.S.C. § 20510(b)(1)-(2) states, "[a] person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved. If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation."

Defendant failed to cite 52 U.S.C. § 20510(b)(3) which states, "If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2)." The claims Plaintiffs allege are of an ongoing nature. This means violations have been occurring since 2020 through the present and were surely present 30 days before each Federal election and present on the day of each election. Accordingly, the notice requirement is inapplicable to this situation.

Regardless, Plaintiffs sent a notice of claim to the MDSBE. The relevant notice of claim is attached to Plaintiffs Amended Complaint as **Exhibit A-2**. This notice of claim was sent on behalf of Kate Sullivan, member of Maryland Election Integrity LLC on November 8, 2023. Further, the violation was not corrected within 90 days pursuant to 52 U.S.C. § 20510(b)(2), and Plaintiffs were forced to file a formal complaint in this Court.

Defendant contends that Plaintiff's notice of claim was sent before Maryland Election Integrity was formed. The Plaintiff organization concedes this fact, but it is irrelevant. Defendant then contends the notice of claim was not "addressed to or directed at the State Board and it did not relate the alleged NVRA violations." A quick look at the notice of claim shows that the entities "demand State and Local Board of Election members to uphold their affirmative duty to maintain accurate Maryland state voter registration records." The NVRA is then specifically stated later in the document. Therefore, the notice was directed to and addressed to the State Board and was related to the NVRA violations.

*Writ of Mandamus*

A private cause of action under 42 U.S.C. § 1983 is proper for HAVA violations and the NVRA contains a private cause of action conferring this court with jurisdiction. A writ of

mandamus may, therefore, not be proper. Writ of mandamus under 28 USCS § 1361 will generally be denied when alternative remedies are available, whether judicial or administrative. *Association of American Medical Colleges v. Califano*, 569 F.2d 101, 186 U.S. App. D.C. 270, 1977 U.S. App. LEXIS 5815 (D.C. Cir. 1977). This court has jurisdiction under at least two federal statutes and Plaintiffs claims for mandamus can be remedied by injunctive relief pursuant to those statutes. Nevertheless, this action is in the *nature* of mandamus to compel the Defendant to perform their non-discretionary duties to Plaintiffs and Maryland voters. If the Court finds that Defendant is correct in their assertion that the Complaint lacks cognizable federal questions, a writ of mandamus would then be proper.

### III. DEFENDANT SUMMARILY DENIES PLAINTIFFS' CLAIMS WHILE PROVIDING NO EVIDENCE TO THE CONTRARY

Plaintiff's provided research, reports, guides, documents, meeting minutes, emails, public record requests, laws, etc. in their Complaint, yet Defendant claims the Complaint is devoid of facts and presents conclusory statements. Defendant claims that the analysis provided in *Restoring Faith in Maryland's Elections* is a "demonstrably flawed analysis." *Restoring Faith in Maryland's Elections* was created by David Morsberger, who has a B.S. in Applied Mathematics; yet, the office of the Attorney General makes conclusory statements about its flaws while pointing out none.

Interestingly, in Footnote 6 of Defendant's Motion to Dismiss, Defendant argues that HAVA does not include voter registration as part of the definition voting system under 52 U.S.C. § 21081. "In this section, the term "voting system" means—the total combination of mechanical, electromechanical, or electronic equipment (including the software, firmware, and documentation required to program, control, and support the equipment) that is used—(A) to define ballots; (B)

to cast and count votes; (C) to report or display election results; and (D) to maintain and produce any audit trail information." *Id.* Voter registrations are used to create pollbooks. Pollbooks are then used for ballot preparation. Ballot preparation "generates the data necessary for tabulating votes within a voting machine, and aggregating tabulated votes within a jurisdiction or state." Cybersecurity and Infrastructure Security Agency, *Critical Infrastructure Security and Resilience Note*, Jul. 28, 2020, at 3, https://www.cisa.gov/sites/default/files/publications/cisa-election-infrastructure-cyber-risk-assessment_508.pdf.

Furthermore, this relationship between voter registrations and the voting system was meticulously laid out in the Complaint. It is further confirmed by information from Harry Haury of United Sovereign Americans who helped draft HAVA. The term voting system can be seen as the entire process whereas voting machines refer to the actual machines. Defendant seems to deny the HAVA error rate claims without even understanding the issue. They cite to a ballot tabulation audit in support of their contention that the number of errors Plaintiffs claim is incorrect. This is not the same thing. The voting system error rates are partly due to ineligible voters being in the voter registration records. If ineligible people vote, then that is a vote in error attributable to the voting system pursuant to HAVA.

Defendant states that Plaintiffs "hypothesize" potential flaws with the states voting equipment. The meeting minutes created by Defendant prove the flaws (modems), they are not hypothesized. Also, Defendant claims the Plaintiffs acknowledge that the flaws were not extant in the 2020 and 2022 elections. Plaintiffs do not acknowledge this. Plaintiffs argue in the Complaint that the PIA requests they sent would prove whether the flaws were extant, yet the Defendant told the Local Boards of Elections not to respond to these requests. See **Exhibit 1**. The Plaintiffs' state and federal claims are meritorious and substantial evidence has been submitted to prove this.

This Court has jurisdiction to hear Plaintiffs HAVA claims, which are proper under 42 U.S.C. § 1983. This court has jurisdiction to hear Plaintiffs NVRA claims because they elected to send the Defendant a notice of claim, although they did not have to. In sum, this court has jurisdiction to hear Plaintiffs federal claims. The court has supplemental jurisdiction to hear the state claims.

Respectfully submitted,

HARTMAN, Attorneys at Law

Date: May 6, 2024  By:  /s/ *C. Edward Hartman, III*
C. Edward Hartman, III, Bar No. 07716
116 Defense Highway, Suite 300
Annapolis, Maryland 21401
Telephone: (410) 266-3232
Facsimile: (410) 266-5561
Email: Ed@Hartman.law
*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May, 2024, I served a copy of the foregoing Plaintiffs' Response to Defendant's Motion to Dismiss by electronic filing to:

Daniel Kobrin
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
dkobrin@oag.state.md.us
*Attorney for Defendant*

Lauren Miller
Brennan Center for Justice at NYU School of Law
120 Broadway, Suite 1750
New York, NY 10271
millerl@brennan.law.nyu.edu

Jasleen K. Singh
Brennan Center for Justice at NYU School of Law
120 Broadway, Suite 1750
New York, NY 10271
Jasleen.singh@nyu.edu

Leah J. Tulin
Brennan Center for Justice at NYU School of Law
1140 Connecticut Avenue NW, Suite 1150
Washington, DC 20036
tulinl@brennan.law.nyu.edu

                                               /s/ *C. Edward Hartman, III*
                                               C. Edward Hartman, III, Bar No. 07716