IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND ELECTION INTEGRITY, LLC, et al., | * |
| Plaintiffs, | * |
| v. | * Civil Case No.: SAG-24-00672 |
| MARYLAND STATE BOARD OF ELECTIONS, | * |
| Defendant. | * |

## MEMORANDUM OPINION

Presently pending before this Court are Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, ECF 20, and Defendant's Motion to Dismiss Plaintiffs' Amended Complaint, ECF 24. Plaintiffs' Motion seeks to prevent Defendant Maryland State Board of Elections from administering or certifying the 2024 primary and general elections until they are rendered secure and compliant with federal and state law. Defendant's Motion seeks to dismiss the case for lack of subject matter jurisdiction. This Court has reviewed the relevant briefing and exhibits. ECF 25, 31, 43.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the following reasons, Defendant's Motion is granted and Plaintiffs' Motion is denied as moot.

---

[1] Defendant has not yet filed its reply in support of its motion to dismiss, but this Court finds it unnecessary to consider the reply to resolve the issues presented.

I.  BACKGROUND

On April 8, 2024, Plaintiffs Maryland Election Integrity, LLC ("Maryland Election Integrity") and United Sovereign Americans, Inc. ("United Sovereign Americans") filed an Amended Complaint against Defendant Maryland State Board of Elections. ECF 16.

Maryland Election Integrity is a Maryland limited liability company containing members who are registered voters in Maryland. *Id.* ¶ 9. The company was "created for the purpose of resolving violations of Maryland law and restoring trust in Maryland Elections." *Id.* ¶ 49. Kate Sullivan, although not named as a Plaintiff, is a member of Maryland Election Integrity and a resident of Baltimore County. *Id.* ¶ 10. She canvassed Baltimore County and found allegedly inaccurate voter registration records. *Id.* She claims to be "personally injured" by the inaccurate records, which "allowed otherwise ineligible voters to vote, thus diluting her vote." *Id.* ¶ 46. Similarly, other members of Maryland Election Integrity claim that their votes have been diluted. *Id.* ¶ 197. United Sovereign Americans is a nonprofit corporation incorporated in Missouri. *Id.* ¶ 2. The company "is not seeking a distinct form of relief" from that sought by Maryland Election Integrity. *Id.* ¶ 13.

In their Amended Complaint, Plaintiffs allege that Defendant violated certain provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501, 20507, Help America Votes Act ("HAVA"), 52 U.S.C. §§ 21081, and Maryland election code, MD. CODE ANN., ELEC. §§ 3-101 to 3-102, 3-502 to 3-5034, 9-102 to 9-103. Specifically, Plaintiffs assert (1) inaccurate voter registration records in violation of NVRA and Maryland code, ECF 16 ¶¶ 24–62, (2) erroneous votes cast in the 2020 and 2022 general elections that exceed the permissible error rates set out in HAVA and Maryland code, *id.* ¶¶ 63–83, (3) the failure to review source code underlying voter machines in violation of HAVA's certification requirements and Maryland

regulations, *id.* ¶¶ 84–99, (4) the use of modems that compromise the security of voting machines in violation of HAVA and Maryland code, *id.* ¶¶ 100–128, and (5) the failure to provide voters an opportunity to correct blank ballots, undervotes, and overvotes in violation of HAVA, *id.* ¶¶ 156–184. In addition to these election-related allegations, Plaintiffs allege that Defendant refused to provide audit logs and configuration reports in violation of Maryland's Public Information Act, MD. CODE ANN., GEN PROVIS. § 4-103. ECF 16 ¶¶ 129–155.

Regarding the fifth claim pertaining to blank ballots, Plaintiffs allege that "a high number of blank ballots were cast in Baltimore County, creating the fear and threatened injury that [Kate Sullivan's] ballot was cast blank without notice to her." *Id.* ¶ 168. Regarding the last claim pertaining to public records, Plaintiffs allege that requests for audio logs and configuration reports "were made," but that the documents were "not produced." *Id.* ¶¶ 126, 147, 178, 183.

On April 15, 2024, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction, largely reflecting the allegations in their Amended Complaint and accompanied by dozens of exhibits. ECF 20. Defendant filed a motion to dismiss the Amended Complaint on April 22, ECF 24, and the Brennan Center for Justice at New York University School of Law ("Brennan Center") filed a motion for leave to file a brief as *amicus curiae* in support of Defendant's motion to dismiss on April 25, ECF 28.[2]

## II. LEGAL STANDARD

When a Rule 12(b)(1) motion contests the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction rests with the plaintiff. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A challenge to jurisdiction

---

[2] This Court denies the motion for leave because it does not provide information relevant to the issue of standing, on which this Court bases its ruling.

may be either facial, *i.e.*, the complaint fails to allege facts upon which subject matter jurisdiction can be based, or factual, *i.e.*, jurisdictional allegations of the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *Richmond*, 945 F.2d at 768. In determining whether jurisdiction exists, the district court regards the pleadings' allegations as mere evidence and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Richmond*, 945 F.2d at 768.

Where a plaintiff lacks standing to pursue a claim, the court lacks subject matter jurisdiction. *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 786 (4th Cir. 2019) ("If a party does not have standing, then there is no federal jurisdiction, and 'the only function remaining to the court is that of announcing the fact and dismissing the cause.'" (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868))). Standing requires a plaintiff to possess "a legally cognizable interest, or 'personal stake' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene,* 563 U.S. 692, 701 (2011)).

## III.  DISCUSSION

Despite Plaintiffs' numerous assertions of problems with Maryland's voting system, this Court can begin and end its analysis with Plaintiffs' standing. "To ensure that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society, a plaintiff may not invoke federal-court jurisdiction unless he can show a personal stake in the outcome of the controversy." *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (internal citations and quotation marks omitted). "A federal court is not a forum for generalized grievances, and the requirement of such a personal stake ensures that courts exercise power that is judicial in nature." *Id.* (internal citations and quotation marks omitted).

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must establish the three "irreducible" minimum requirements of Article III standing: (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).

The Amended Complaint names two companies as Plaintiffs: United Sovereign Americans and Maryland Election Integrity. ECF 16 ¶¶ 1–2. Such organizational plaintiffs can satisfy the standing requirements either in their own right to seek judicial relief for injury to themselves, or as representatives of their members who have been harmed. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013).

Plaintiffs lack standing to seek relief for injuries to themselves. An organization "may suffer an injury [in its own right] when a defendant's actions impede its efforts to carry out its mission." *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). However, an organization "that seek[s] to do no more than vindicate [its] own value preferences through the judicial process" cannot establish standing. *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Maryland, Inc.*, 843 F. App'x 493, 495 (4th Cir. 2021) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972)). Here, Maryland Election Integrity was "created for the purpose of resolving violations of Maryland

law and restoring trust in Maryland Elections." ECF 16 ¶ 49. Although the company's mission might theoretically be impeded by the alleged voting violations, the company does not appear to conduct any regular activities for achieving that mission besides bringing the instant lawsuit and conducting investigations to support the lawsuit. Therefore, the alleged harm is "simply a setback to the organization's abstract social interests" rather than a "concrete and demonstrable injury to the organization's activities." *Havens Realty*, 455 U.S. at 379. United Sovereign Americans similarly lacks standing in its own right because it "is not seeking a distinct form of relief" from the relief sought by Maryland Election Integrity. ECF 16 ¶ 13.

Plaintiffs also lack standing as representatives of their members. To maintain such standing, they must show that the "members would otherwise have standing to sue in their own right." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). But United Sovereign Americans does not purport to represent any individual members. *See* ECF 16 ¶ 2. Maryland Election Integrity, on the other hand, consists of members who are registered voters in Maryland, including Kate Sullivan. *Id.* ¶¶ 9–10. Plaintiffs allege that the Defendant's actions have "resulted in dilution of [those members'] votes and . . . concrete harm to [their] rights to vote." *Id.* ¶¶ 46, 197. But for election law cases, the Supreme Court has "long recognized that a person's right to vote is individual and personal in nature." *Gill*, 585 U.S. at 65 (internal citations and quotation marks omitted). Thus, "voters who allege facts showing disadvantage to themselves as individuals have standing to sue to remedy that disadvantage." *Id.* at 65–66 (internal citations and quotation marks omitted). Here, Plaintiffs have not shown disadvantage to members of Maryland Election Integrity as individuals because the Amended Complaint lacks any information about whether Kate Sullivan or other members actually voted in

any Maryland election, much less how Defendant's actions helped defeat their supported candidates or causes.

To the extent that Plaintiffs are simply alleging that Defendant did not act in accordance with the law in administering the elections, any injury from those actions would accrue to every citizen and would not be particularized to members of Maryland Election Integrity. "[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984)); *see also United States v. Hays,* 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power."). In short, Plaintiffs allege no concrete or particularized injury to members of Maryland Election Integrity but simply generalized grievances applicable to the community as a whole. Courts routinely find such grievances insufficient to demonstrate standing to sue. *See Moore v. Circosta*, 494 F. Supp. 3d 289, 312 (M.D.N.C. 2020) ("[T]he notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury in fact necessary for Article III standing."); *Iowa Voter All. v. Black Hawk Cnty.*, 515 F. Supp. 3d 980, 991 (N.D. Iowa 2021) ("Because plaintiffs cannot show how the counties' alleged violations compromised the integrity of the election such that they were injured in a personal and individual way, their injury is undifferentiated from the injury to any other citizen."); *see also O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747, 2021 WL 1662742, at *6–8 (D. Colo. Apr. 28, 2021) (collecting cases dismissing allegations of election fraud for failure to show standing), *aff'd*, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022), *cert. denied sub nom. O'Rourke v. Dominion Voting Sys.*, No. 22-305, 2022 WL 17408191 (U.S. Dec. 5, 2022).

In addition to alleging standing based on a vote dilution theory, Plaintiffs allege that Kate Sullivan has standing to raise the issue that "a high number of blank ballots were cast in Baltimore Count, creating the fear and threatened injury that her ballot was cast blank without notice to her." ECF 16 ¶ 168. But such "threatened injury must be certainly impending to constitute injury in fact." *Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) (quoting *Clapper*, 568 U.S. at 410). Here, the mere hypothetical possibility of a past, speculative injury does not give rise to a certainly impending injury.

Finally, Plaintiffs allege that requests for configuration reports and audit logs "were made" under Maryland's Public Information Act. ECF 16 ¶¶ 126, 147, 178, 183. But it is not clear whether Kate Sullivan or any member of Maryland Election Integrity made the requests. Such information is needed to show a redressable injury in fact because the Public Information Act only provides a cause of action to a person who is "denied inspection of a public record . . . ." MD. CODE ANN., GEN. PROVIS. § 4-362.

In sum, Plaintiffs lack standing to bring their claims and this Court therefore lacks subject matter jurisdiction. Plaintiffs' claims are dismissed without prejudice. *See S. Walk*, 713 F.3d at 185 ("[A] court that lacks jurisdiction has no power to . . . dispose of a claim on the merits").

## IV.   CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, ECF 24, will be granted. Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, ECF 20, will be

denied as moot.[3] The Brennan Center's Motion for Leave, ECF 28, will also be denied. The case will be closed. A separate Order follows.

Dated: May 8, 2024

/s/
Stephanie A. Gallagher
United States District Judge

---

[3] Even if Plaintiffs had standing, this Court would deny their motion for a temporary restraining order and preliminary injunction as barred by laches. "Laches is an equitable doctrine that can be raised by a defendant as an affirmative defense to a claim, and requires that the defendant show (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Dann Ocean Towing, Inc.*, 756 F.3d 314, 318 (4th Cir. 2014) (internal citations and quotation marks omitted). First, Plaintiffs have lacked diligence and have delayed unreasonably in filing suit. Plaintiffs' claims stem from their canvassing of voters and analysis of Maryland's voter registration database regarding the 2020 and 2022 general elections. But they did not canvass voters until September, 2023 to November, 2023, ECF 20-19 ¶ 34, and they obtained snapshots of the database from August, 2021 to July, 2023, ECF 20-8 at 3. Further, Plaintiffs did not bring suit until March, 2024. ECF 1. Second, this lack of diligence would result in prejudice and significant disruption to Defendant's planning and implementation of the primary elections if injunctive relief were granted. Mail-in ballots have already been printed and processed. ECF 25-1 ¶¶ 7–10. Early voting is almost concluded, and the primary election is in less than one week.